IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| VIVIAN DUDLEY, | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO. 10-00103-CB-C |
| CITY OF MONROEVILLE, | ) | |
| Defendant. | ) | |

## **ORDER**

This matter is before the Court on a motion for summary judgment filed by the City of Monroeville. At issue is whether the Plaintiff, Vivian Dudley, can present sufficient evidence to support her claim that her employer, the City of Monroeville, retaliated against her for filing a race discrimination charge with the EEOC. For reasons discussed below, the Court finds Plaintiff's evidence to be inadequate.

**Findings of Fact**

Plaintiff Vivian Dudley has been employed by the City of Monroeville (the City) since October 21, 2005. She was initially hired as a magistrate for the City's municipal court and was promoted to the position of court clerk/magistrate on January 22, 2006. Phillip Sanchez, the City's part-time municipal judge, hired, promoted and supervised Dudley.

Dudley was dissatisfied with her pay classification after the promotion. The City classifies jobs by pay grade, and each grade has a series of pay steps. The court clerk /magistrate position is a higher pay grade classification (grade 6) than the magistrate position (grade 5). Dudley disagreed with the step at which she was classified her and lodged a complaint with the City. According to the City's Personnel Rules and Regulations, an employee promoted to a

higher grade is placed at the lowest step within that grade that has a higher pay rate than the employee's former pay rate.¹ In a letter dated November 2, 2006, City Attorney Nicholas Hare informed Dudley that her complaint had been denied by the City's Personnel Committee and also explained the applicable personnel policy.² Dudley was not satisfied with the outcome of her complaint and continued to investigate her options.

After another city employee moved to a higher pay grade and did not go back to step one, Dudley began to think that she had been discriminated against because of her race or sex. She spoke with the EEOC about the process for filing a charge of discrimination and, at some point, informed Charles Godwin, the magistrate who worked with her, that she was contemplating filing an EEOC charge. Dudley also told Judge Sanchez that she "was thinking about filing with the EEOC." Dudley dep. 132, Def.'s Ex. 1, ECF No. 23-1. Dudley did file a charge of discrimination with the EEOC on April 25, 2007. The EEOC sent a written notice, dated May 11, 2007, to the City informing it of the charge. Judge Sanchez became aware of the EEOC charge no earlier than May 15, 2007.³ ⁴

On May 9, 2007, Sanchez and Dudley had a disagreement over a box that Sanchez wanted to place on the counter in the Clerk's office. The purpose of the box was to allow probationers to leave papers and messages for the court's probation officer when she was out of

---

¹ For Dudley, application of this rule resulted in a pay rate increase of one cent per hour.

² Based on Hare's letter, it appears that Dudley believed she should have been placed at a higher step (not merely a step with a higher pay) than her former step in the lower grade. Hare Ltr., Def.'s Ex. 4, ECF No. 25-4.

³ For reasons discussed, *infra* at 12-14, Plaintiff's assertion to the contrary is not properly supported.

⁴ Ultimately, the EEOC was unable to conclude that discrimination had occurred. Plaintiff has not asserted any discrimination claim in this lawsuit.

2

her office.  The probation officer had asked that a mail slot be created in her door, but Sanchez did not want to modify the door.  Instead, he proposed placing a lock box in the clerk's office.  According to Sanchez, Dudley responded that she "was not interested in being responsible for the property of the Judicial Correction Service."  Sanchez 5/15/07 Ltr., Def.'s Ex. 10, ECF. No. 25-10.  When Sanchez tried to talk to Dudley, she responded that she would deal with him tomorrow and that she was leaving.  The following day, Sanchez notified Plaintiff that she was suspended (with pay).  On May 15th, Sanchez sent Dudley a letter memorializing her suspension based on "gross insubordination" and providing written notice of reprimand for several instances of "intentional failure and refusal to carry out instructions."[5]  *Id.*  On May 16th, Sanchez placed a written warning in Plaintiff's personnel file referencing the May 15th letter.  Sanchez did not learn of Plaintiff's EEOC discrimination charge until some time after the May 15th letter was written and before July 26, 2007. Sanchez dep. 21, Def.'s Ex. 2, ECF No. 23-2.

On June 22, 2007, Sanchez sent Dudley a second written notice of reprimand.  Sanchez 6/22/07 Ltr., Def.'s Ex. 16, ECF No. 23-6.  This reprimand listed several instances of misconduct.  First, Dudley had taken on a student intern to work in the Municipal Court office without approval from Judge Sanchez or any other authority.  Second, Dudley continued to disregard instructions to use the TAMIS system and also to keep overtime to a minimum.  Finally, Sanchez cited continued citizen complaints about Dudley's treatment of them and attached two letters from citizens.

---

[5] Those instances included:  (1) failure to use the City's automated recordkeeping system (TAMIS) to clock in and out; (2) refusal to train the court magistrate in certain court duties; (3) citizen complaints about Dudley's rudeness; (4) police department complaints about Dudley's attitude and lack of cooperation.

3

Dudley responded to the second notice of reprimand with a letter dated July 24, 2007. Dudley 7/24/07 Ltr., Def.'s Ex. 24, ECF No. 25-24. In that letter, Dudley denied that taking on a student intern was improper. She admitted that she "permitt[ed] a summer student to work." *Id.* Dudley justified her decision to take on the student because "[w]e were saturated with work to be done. . . [and] permitted [the student]to work with old files." Dudley further stated: "Never was the court office given a courtesy call and told letting people help us work was an unacceptable practices." *Id.* Finally, she accused Sanchez of failing to "follow[ ] back up with the office to find out weather [sic] the facts which you had gathered were correct or not." *Id.* In a paragraph labeled "Continued Disregard of instructions to use the TAMIS System," Dudley justified her overtime as "necessary to see the work caught up." She did not, however, discuss Sanchez's claim that she disregarded instructions to use TAMIS. Finally, with regard to the citizen complaints Dudley stated: "Again, Judge, you did not speak to me as my immediate supervisor prior to writing me up based on complaints from people we deal with on a regular basis through the court office." *Id.* Dudley denied that she was rude to the two citizens who wrote complaint letters and accused Sanchez of "continu[ing] to call" one of them to persuade her to put her complaint in writing. *Id.*

The citizen complaints that gave rise to the letters of reprimand and the decision to require workplace skills training were an ongoing issue. The complaints were both verbal and written and "at that time there were a good many." Sanchez dep. 12, Def.'s Ex. 2, ECF No. 23-2. Sanchez testified that "folks would come to my office, folks would stop me around town, and I was fielding complaints and came up with the response that they should be in writing. That way there was a distinction made between those that were minor and those that were serious and that should be followed up with. *Id.* Among the written complaints received was a letter dated

4

May 22, 2007 from LaBrinka Wallace who stated that Dudley had refused to give her a full refund of her bond and had deducted court costs from the bond refund due to Dudley's favoritism to an opposing party. Wallace Ltr., Def.'s Ex. 19, ECF No. 23-19. In a letter dated June 15, 2007, Pamela Hands accused Dudley of being "very rude" when she telephoned the Court Clerk's office to ask for the number of another city employee. Hands Ltr., Def. Ex. 20, ECF No. 23-20. Candice Kidd wrote a statement "To whom this may concern" asserting a complaint against Dudley for "getting smart with me about my case" when Kidd came into the Court Clerk's office. Kidd Ltr., Def.'s Ex. 21, ECF No. 23-21.[6] Kidd further alleged that on June 6, 2007 when she was in court on her case, Dudley answered questions Judge Sanchez directed at Kidd, Dudley interrupted when she spoke and generally took the other person's side.[7] *Id.* In a letter dated July 5, 2007, Vicki Broadus Owens wrote a letter to Sanchez complaining that Dudley treated her rudely when she went with her son to obtain a warrant after an automobile accident. Owens Ltr., Def.'s Ex. 22, ECF No. 23-22. According to Owens, Dudley "ordered [Owens] to leave the office" and told her not to come back in. *Id.* Owens submitted a second letter of complaint, which Sanchez referred to in his July 30th letter.[8] In addition to the

---

[6] The complaints from Hands and Kidd are the complaints referred to in Sanchez's July 24th reprimand.

[7] Dudley has submitted two unsworn statements from Kidd, dated July 22, 2007 and July 30, 2007 stating (1) that she only put her complaint in writing because Judge Sanchez called her house and asked her to, (2) that she wants to retract her statement because feels she was being used and (3) that she feels bad because deep in her heart she knows "Mrs. Vivian is a good person." Pl.'s Exs. 2 & 3, ECF Nos. 25-2 & 25-3. To the extent these unsworn handwritten statements should be considered as evidence, neither of them dispute the fact that Kidd made a complaint or, for that matter, the truth of that complaint.

[8] The second complaint letter from Owens has not been made a part of the record.

written complaints, both Sanchez and the mayor fielded verbal complaints from citizens about Dudley. Sanchez dep. 12, 24.

On July 30, 2007, Judge Sanchez wrote Dudley regarding "a second letter of complaint received from Ms. Vicki Broadus Owens" and requesting a response from Dudley to Ms. Owens' complaint. Sanchez 7/30/07 Ltr., Def.'s Ex. 25, ECF No. 25-25. The letter also states as follows:

> Additionally, due to the cumulative nature of the complaints received, it has been decided that you will attend a 40 hour training session on work place skills and behavior at the Alabama Career Center, Alabama Southern Community College. . . . It has further been decided that a final decision regarding your merit increase will be withheld pending successful completion of this training session[;] you will, however, receive your regular pay while attending the session.

*Id.* That letter was followed by a letter dated August 3, 2007, from Mayor Anne Farish, which stated that "the City Council would like to review this requirement [that Dudley attend a 40-hour training session] to verify that this assignment is being made in accordance with the City Personnel Rules and Regulations." Farish Ltr., Def's Ex. 27, ECF No. 25-27. By letter dated August 23, 2007, Sanchez informed Dudley that "the Monroeville City Council affirmed the decision that you will attend a 40 hour training session for workplace skills and behavior." Sanchez 8/23/07 Ltr., Def.'s Ex. 29, ECF No. 23-29. Dudley was tentatively scheduled to attend training September 10-14, 2007. The class was discontinued before that date, however, so Dudley never actually attended training.

On September 18, 2007, Sanchez recommended to the City Council a merit increase for Dudley and "noted that her job performance has improved." 9/18/07 City Council Minutes, Def.'s Ex. 31, ECF No. 25-31. Ultimately, the pay increase was approved, retroactive to July 26, 2007, the date Plaintiff first became eligible for a merit increase. *Id.*; Payroll/Status Change Notice, Def.'s Ex. 33, ECF No. 25-33.

6

Plaintiff filed a second EEOC charge on September 27, 2007, alleging that Sanchez had retaliated against her for filing the discrimination charge. Upon receipt of a right-to-sue letter, Plaintiff timely filed this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq* asserting a claim of retaliation "as a result of [ ] having on or about April 25, 2007, filed a race and sex discrimination claim with the EEOC." Compl. ¶ 31, ECF No. 1. According to the complaint, "[t]he retaliation included suspension, withholding pay raise, compensation, discipline, job/work assignments and other terms and conditions affecting Dudley's employment." *Id.*

**Issues Presented**

In her summary judgment response, Dudley asserts that the City is liable for the following acts of retaliation: (1) "citizen complaints," (2) "reprimands," (3) "warnings," (4) "suspension," (5) "was asked to attend a forty-hour training session," and (6) "experienced a delay in merit pay increase." Pl.'s Sum. Jdgt. Rsp. ¶ 23, ECF No. 25. For various reasons, the City asserts that Dudley cannot adduce sufficient evidence to support a claim of retaliation based on any of these alleged acts. Below the Court sets out the parties' summary judgment burdens as well as the law applicable to retaliation claims before addressing the particulars of Plaintiff's claim.

*Legal Standards*

*Summary Judgment*

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at

7

trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied his responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted).

The factual disputes raised by the nonmoving party must be both *material and genuine*. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "'Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. For factual issues to be considered genuine, they must have a real basis in the record.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 918 (11th Cir. 1993)).[9]

---

[9]The method for supporting or disputing facts on summary judgment is set out explicitly in the newly-amended Fed. R. Civ. P. 56(c):
>    (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(Continued)

*Title VII Retaliation Claims*

Title VII makes it unlawful for an employer to discriminate on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2. It also prohibits retaliation against one who has engaged in statutorily protected conduct. *Clover v. Total Systems Services, Inc.*, 176 F.3d 1346, 1350 (11th Cir. 1999); 42 U.S.C. § 2000e-3(a).

> [The statute] recognizes two forms of statutorily protected conduct. An employee is protected from discrimination if (1) "he has opposed any practice made an unlawful employment practice by this subchapter" (the opposition clause) or (2) "he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter" (the participation clause).

*Clover*, 176 F.3d at 1350.

When a plaintiff relies on circumstantial evidence to support a retaliation claim under Title VII, the evidence is evaluated using the familiar "shifting burdens" analysis set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993) (retaliation). "To prove discriminatory [or retaliatory] treatment through circumstantial evidence: (1) a plaintiff must first make out a prima facie case, (2) then the burden shifts to the defendant to produce legitimate, nondiscriminatory reasons for the adverse employment action, and (3) then the burden shifts back to the plaintiff to establish that these reasons are pretextual."

---

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
> (2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

*Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1375 (11th Cir. 1996) (internal citations omitted).

A prima facie case of retaliation requires proof that "that [the plaintiff] engaged in statutorily protected activity, [s]he suffered a materially adverse action, and there was some causal relation between the two events." *Butler v. Alabama Dept. of Transportation*, 536 F.3d 1209, 1212 (11th Cir. 2008). As discussed above, statutorily protected conduct falls into two categories—conduct protected by the opposition clause and conduct protected by the participation clause. An employer's action is materially adverse "if it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations and citations omitted). To demonstrate a causal link between the two, the plaintiff must prove only that "the protected activity and the adverse action were not wholly unrelated." *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993). Though the causal link element is broadly defined, "[a]t a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." *Id.* If the plaintiff meets her burden of proof as to each of these elements, a presumption of retaliation arises. *Id.*

Once a prima facie case is established, the defendant must "articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted and drops from the case. After the defendant makes this showing, the plaintiff has a full and fair opportunity to demonstrate that the defendant's proffered reason was merely a pretext to mask discriminatory actions." *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009) (internal citations and quotations omitted). When a defendant asserts multiple reasons for its decision, the plaintiff must

"produc[e] evidence sufficient to discredit in the mind of a reasonable juror *all* of the defendant's proffered nondiscriminatory reasons for its actions. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997) (emphasis added). The standard for demonstrating pretext in this Circuit is quite clear:

> A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.

*Chapman v. AI Transport,* 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).

Plaintiff alleges that Defendant retaliated against her in numerous ways. Defendant denies any retaliation and argues that it is entitled to summary judgment. The claimed instance of retaliation are analyzed separately below,[10] applying the *McDonnell Douglas/Burdine* analysis.

**Analysis of Plaintiff's Retaliation Claims**

*Soliciting Citizen Complaints*

Dudley lists "citizen complaints" as one form of retaliation against her, though the factual basis of this claim is not clearly spelled out. It apparently arises from an unsworn statement from one complainant, Candice Kidd. In that statement, Kidd avers that she only put her verbal complaint (which she had previously made to Sanchez) in writing because Sanchez called her house and asked her to do so. This statement cannot be considered by the Court because it is not an affidavit or declaration made under penalty of perjury. *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003) (unsworn statements cannot be considered by court when deciding motion for summary judgment). Even if Kidd's statement could be considered as evidence, the

---

[10] Related retaliation claims are grouped together.

Defendant has presented a legitimate nondiscriminatory reason for Sanchez's action. Sanchez testified that he regularly asked citizens who approached him with verbal complaints to put those complaints in writing. He did this to separate serious complaints from trivial ones. Dudley has presented no evidence to demonstrate that this reason is a pretext for retaliation.

*May 2007 Suspension, Reprimand and Warning*

Dudley cannot prevail on a retaliation claim based on her May 10th suspension, the May 15th letter of reprimand and May 16th warning because she cannot prove a causal connection between those actions and any protected activity. At the very least, Dudley must prove that the Defendant--or in this case, Sanchez, the decisionmaker—was aware of the protected activity. *Goldsmith,* 996 F.2d at 1163. The suspension and the related reprimand and warning all grow out of a May 9th incident that Sanchez characterized as "gross insubordination."[11] As a result Sanchez, suspended Plaintiff immediately and followed up with the May 15th letter of reprimand and the May 16th warning notice (which referred to the May 15th reprimand letter). When the suspension occurred and the disciplinary events were set in motion, Sanchez was unaware of Dudley's EEOC charge. Sanchez could not say exactly when he learned about Dudley's EEOC discrimination charge, but he testified that it was some time *after* he wrote the May 15th letter and before July 26, 2007.

Plaintiff's best evidence regarding notice to Sanchez is her deposition testimony that she told Sanchez that she "was *thinking* about filing with the EEOC." Dudley dep. 132 (emphasis added). Plaintiff's statement does not convey an intent to carry through with an EEOC filing, nor does it suggest a completed event. Plaintiff's deposition testimony does not, therefore, prove

---

[11] Dudley disputes some of the particulars of Sanchez's account of that incident, she admits that she left in the middle of a discussion and told Sanchez, her supervisor, that she would talk to him about it the next day.

that Sanchez was aware of any actual protected activity (i.e. participation in an EEOC charge) at the time of the suspension, reprimand and warning.[12] Plaintiff attempts to bolster her claim that Sanchez was aware of her EEOC charge by pointing to an entry in a self-serving, unsworn timeline she created as summary judgment exhibit. Plaintiff's timeline entry does not create an issue of fact for two reasons. First, it is an unsworn statement and, as such, cannot be considered on summary judgment. *Carr*, 338 F.3d at 1278 n. 26. Second, even if the evidence could be considered, the entry fails to create a material factual dispute. The entry, dated May 3, 2007, states that Plaintiff "[i]nformed Municipal Judge of my intention to file an EEOC charge."[13] Pl.'s Ex. 4, ECF No. 25-4. This is nothing more than a restatement of paragraph 11 of the complaint. In response to specific questioning at deposition, Plaintiff clarified this allegation, testifying she told Sanchez that she was "thinking about filing" an EEOC charge. Dudley dep. 132. In other words, Plaintiff attempts to dispute her specific testimony by reasserting a broad claim contained in the complaint. A party cannot rely on the bare assertions of the complaint to create an issue of fact on summary judgment. *Jones v. Kootenia County*, 2011 WL 124292 *6 (D. Idaho Jan. 13, 2011).

The evidence, viewed in the light most favorable to the Plaintiff, demonstrates that as of the date of the suspension and reprimand Sanchez knew only that Plaintiff was thinking about

---

[12] The Plaintiff does not argue that the statement "thinking about filing" an EEOC charge should be construed as opposition to unlawful discrimination, and the Court could not interpret it as such.

[13] As Defendant points out, Plaintiff's testimony rather illogical. By May 3, 2007, Plaintiff had already filed an EEOC charge, yet she testified that she told Sanchez in May that she was *thinking* about doing so.

13

filing an EEOC charge.[14]  Sanchez did not learn that a charge had been filed until sometime after he wrote the May 15th reprimand letter.  That knowledge is insufficient to create a causal link between Plaintiff's EEOC charge and the May 2007 suspension, reprimand and warning.  Absent a causal link, there is no prima facie case of retaliation based on these alleged adverse actions.

*June 22nd Reprimand Letter*

Defendant does not dispute Plaintiff's ability to prove a prima facie case of retaliation with respect to this letter, at least not as far as the Court can decipher,[15] but it does contend that there were legitimate nondiscriminatory reasons for the reprimand.  Those reasons are contained within the letter itself.  On June 22, 2007, Judge Sanchez wrote a letter of reprimand to Plaintiff based on several separate instances of misconduct.  Def.'s Ex. 16, ECF No. 23-16.  First, Plaintiff had, without authorization, taken on a college student as an intern in the Municipal Court office. Second, the city clerk had informed Sanchez that Plaintiff continued to disregard Sanchez's instructions that court personnel use the City's TAMIS System to keep track of their hours.  Third, Plaintiff had failed to minimize overtime, resulting in 26 hours of overtime in one two-week pay period.  Despite having been specifically instructed to take a lunch hour (to avoid overtime), she had worked four days in a two-week period with no lunch breaks.   Finally, the

---

[14] Defendant has not completely negated the possibility that Sanchez could have learned of the EEOC charge before he placed the warning in Plaintiff's file on May 16th.  However, because that warning references the May 15th reprimand letter and is based on the same incident, the Court finds that it is a continuation of the May 15th disciplinary action.

[15] The Court's efforts to analyze the issues have been hampered by the parties' muddled application of the *McDonnell Douglas/Burdine* factors.  Plaintiff has, in effect, alleged at least six discrete retaliation claims.  It would have been helpful if the parties had separately addressed each claim under *McDonnell Douglas/Burdine*.

letter cites "two letters of complaint received this week from citizens with regard to your treatment of them."

Plaintiff has pointed to no evidence that would tend to show that *any* much less *all* of the reasons given for the reprimand are pretextual. The entire basis of Plaintiff's pretext claim is as follows:

> Dudley's problems began at the time she filed her first EEOC charge and seemed to end when she filed her second EEOC charge of retaliation. Judge Sanchez admits that he wrote more letters to Dudley 'during that time than I do now". His only reason give was "there were issues with Ms. Dudley's interaction with the pubic and other things".

Pl.'s Brf., ECF No. 25. Plaintiff's argument is nonsensical. Events giving rise to a retaliation claims necessarily occur *after* a plaintiff engages in protected activity, such as filing an EEOC charge. That Dudley's problems "seemed to end" after she filed her EEOC retaliation charge does not undermine the specific reasons for the June 22nd reprimand. Because she has no evidence that each of the reasons given for the reprimand was pretextual,[16] she cannot sustain a retaliation claim based on this event.

*Training Requirement and Delayed Merit Pay Increase*

---

[16] Indeed, Plaintiff would be hard-pressed to counter the reasons relied on by the Defendant. In her written response to the June 22nd letter, Plaintiff admitted that she had taken on a student intern without permission but faulted Sanchez for failing to give her a "courtesy call" to tell her it was an unacceptable practice. She admitted incurring overtime but justified it by the workload. She did not respond to Sanchez's assertion that she had failed to use the TAMIS system despite having been direct to do so. She did deny that she was rude to the citizens whose complaints were attached to Sanchez's letter. Even so, she chastised Judge Sanchez for failing to speak with her about the citizen complaints before issuing a written reprimand. In sum, Plaintiff has admitted most of the conduct while disagreeing with the Defendant's decision to discipline her for that conduct. An employee cannot establish pretext by substituting her own business judgment for that of the employer or by quarreling with the wisdom of the employer's decision. *Chapman*, 229 F.3d at 1030.

Defendant argues that the decisions to require Plaintiff to attend a forty-hour training session and to delay her merit pay increase were not adverse and, even if they were, were justified by a legitimate nondiscriminatory reason.[17] On July 30, 2007, after a second written complaint from the same citizen in less than a month, Sanchez informed Plaintiff by letter that "due to the cumulative nature of the complaints received, it has been decided that you will attend a 40 hour training session on work place skills and behavior at the Alabama Career Center, Alabama Southern Community College" and that "a final decision regarding your merit increase will be withheld pending successful completion of this training session." Ultimately, Plaintiff was not required to attend the training session because it was cancelled, and she received the merit pay increase retroactively. Defendant argues that these are not adverse actions and, thus, Plaintiff has failed to prove a prima facie case. However, because adverse action under Title VII's anti-retaliation clause is broadly define, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), the Court will assume, *arguendo*, that requiring attendance at a training session and delaying a decision on merit pay would suffice.

Defendant asserts, generally, that citizen complaints, *inter alia*, provided a legitimate nondiscriminatory reason for its actions. Furthermore, as with the June 22nd reprimand letter, the reason for the action is contained within the letter itself. Therefore, the question is whether "the cumulative nature of citizen complaints" is a pretext for retaliation. Plaintiff's evidence of pretext is the same with respect to all claims—that the timing of the adverse actions in relation to her EEOC charges somehow demonstrates pretext.[18] For the reasons discussed above, *supra* at

---

[17] Because these separate acts of alleged retaliation were in response to the same conduct and set out in the same letter, the Court addresses them concurrently.

[18] Moreover, it is difficult to imagine how Plaintiff could refute the reason for requiring training and delaying the merit pay decision. Defendant has submitted evidence of five written
(Continued)

16

15, that argument is meritless. Plaintiff's retaliation claim based on these acts also fails for lack of evidence of pretext.

**Conclusion**

For the foregoing reasons, the Court finds that the Defendant is entitled to summary judgment. It is, therefore, **ORDERED** that the motion for summary judgment be and hereby is **GRANTED**.

**DONE** this the 14th day of March, 2011.

                                                s/*Charles R. Butler, Jr.*
                                                **Senior United States District Judge**

---

complaints over a two-month period along with Sanchez's deposition testimony that both he and the mayor were fielding verbal complaints about Plaintiff.